UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALETA PITMAN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No._____ |
| v. | ) | |
| | ) | |
| THE GUERRINI LAW FIRM and | ) | |
| JAFFE & ASHER, LLP, | ) | |
| | ) | |
| DEFENDANTS. | ) | Jury Demanded |

## COMPLAINT

Plaintiff, Aleta Pitman, brings this action to secure redress from unlawful credit and collection practices engaged in by Defendants The Guerrini Law Firm and Jaffe & Asher LLP. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331, as Defendants do business in the State of Illinois.

2. Venue in this District is proper because Defendants' collection demands were received here, and Defendants transact business here.

## PARTIES

3. Plaintiff, Aleta Pitman, ("Plaintiff"), is an individual and resident of the County of San Diego, California, and is a "consumer" as defined at 15 U.S.C. §1692a(3) of the FDCPA.

4.  Defendant, Jaffe & Asher, LLP, ("Jaffe") is a law firm organized under the laws of the State of New York, and is located at 600 Third Avenue, New York, NY 10016.

5.  Defendant, The Guerrini Law Firm, ("Guerrini") is a law firm organized under the laws of the State of California, and is located at 750 East Green Street, Suite 200, Pasadena CA, 91101.

6.  Jaffe is engaged as a "debt collector" as defined by and within the meaning of the FDCPA, §1692a, and is engaged in the business of collecting defaulted consumer debts, including debts from individuals located in Illinois.

7.  Guerrini is engaged as a "debt collector" as defined by and within the meaning of the FDCPA, §1692a, and is engaged in the business of collecting defaulted consumer debts, including via contact with individuals located within Illinois.

**FACTS COMMON TO ALL COUNTS**

8.  Some time before March 10, 2010, Plaintiff incurred a financial obligation on an American Express ("Amex") credit card for account # XXXXXXXXXXX 2002 ("alleged debt"). Said debt consisted of credit card charges made for property and services that are for personal, family, and household purposes, and thus said financial obligation is a "debt" under §1692a(5) of the Fair Debt Collection Practices Act ("FDCPA").

9.  Sometime thereafter, Amex hired and/or contracted with the collection law firm of Jaffe & Asher to bring about the collection of the alleged debt. (Exhibit A, Collection letter from Jaffe dated March 10, 2010).

10. Jaffe thereafter consigned the alleged debt to be collected by The Guerrini Law Firm, a collection law firm located in California within the County wherein Plaintiff resides. On April 22, 2010, Amex filed a lawsuit against the Plaintiff to bring about the collection of the alleged debt. (Exhibit B, Copy of collection letter from Guerrini and Caption of Lawsuit).

11. Plaintiff thereafter, on May 17, 2010, agreed to settle the alleged debt for account # XXXXXXXXXXX2002, on terms acceptable to Amex. As part of the written agreement provided by Guerrini and agreed to by the parties ("Agreement") and Jaffe, Amex agreed to execute a Release of claims for account # XXXXXXXXXXX 2002 in exchange for payment from the Plaintiff in the amount of $12, 276.67, to be paid in three roughly equal installments, each to be paid on June 15, 2010, July 15, 2010, and August 15, 2010. (Exhibit C, Agreement).

12. Plaintiff signed the Agreement on June 15, 2010, and faxed the same to Guerrini. Plaintiff timely made her first installment payment on June 15, 2010, by sending the same to Guerrini to the address stated in the Settlement Agreement, via US Mail.

13. On or around June 15, 2010, after Plaintiff had already sent her first payment to Amex via Guerrini in accordance with the terms of the Agreement executed between Plaintiff and Amex, Plaintiff had a telephone conference regarding the alleged debt with an employee or agent of Guerrini who identified herself as "Jessica Chow".

14. During the pendency of said telephone conference, Plaintiff asked to be provided a copy of the Agreement signed by Amex. In response, Ms. Chow told Plaintiff that Amex would not execute the Agreement unless Plaintiff first settled a second, unrelated account debt that Plaintiff owed to Amex under credit card # XXXXXXXXXXX 2000 ("second debt").

15. At no time prior to June 15, 2010 did Amex, Guerrini, or Jaffe ever inform Plaintiff did she would be required to settle the credit card debt for the second debt as a condition before Amex would execute the Agreement.

16. There is no provision in the Agreement requiring Plaintiff to settle the second debt as a condition for Amex to execute the Agreement.

17. On or around June 15, 2010, Plaintiff received a letter from Guerrini dated June 14, 2010, stating in part that it had been retained to "bring about the collection of the $5,745.54 which you owe to the creditor on the above-referenced account." Said letter refers to a "Fw acct#: XXXXXXXXXXX2000" owed to "Creditor: American Express Bank, FSB". (Exhibit D, Letter from Guerrini dated June 14, 2010).

18. Thereafter on June 22, 2010, in response to said letter, Plaintiff sent Guerrini a letter requesting verification for account# XXXXXXXXXXX2000, the "second debt", and Guerrini received a copy of said letter via fax on the date indicated above. (Exhibit E, Letter to Guerrini requesting verification of the alleged debt).

19. On or around June 28, 2010, Amex filed a lawsuit against the Plaintiff to bring about collection of the second debt for account# XXXXXXXXXXX2000. The lawsuit was filed by Guerrini. (Exhibit F, Copy of Lawsuit filed on June 28, 2010).

20. Guerrini did not first provide verification of the second debt for account# XXXXXXXXXX2000, before filing the suit to collect the second debt from the Plaintiff.

21. After already having filed suit against the Plaintiff to recover the second debt, for Amex account# XXXXXXXXXX2000, Guerrini sent verification of the debt to the Plaintiff via US Mail, with a cover letter dated July 7, 2010, and said letter was received by Plaintiff shortly thereafter. Said letter reads, in part as follows:

**Good Morning:**

**Please find enclosed documents responsive to your client's recent validation request.** (Exhibit G, Copy of Letter from Guerrini to Plaintiff dated July 7, 2010).

22. On May 12, 2010 during the pendency of a telephone conference with the Plaintiff, Guerrini employee or agent Jessica Chow told Plaintiff that the settlement approval for the alleged debt could only be made by Jaffe.

23. On June 11, 2010 during the pendency of a telephone conference with the Plaintiff, Guerrini employee or agent Jessica Chow told Plaintiff that the settlement approval for the second debt could only be made by Jaffe.

24. At all times relevant hereto, Guerrini was acting on behalf of, and as an agent for, Jaffe in its attempts to collect the alleged debt and the second debt.

25. Guerrini's actions are imputed to Jaffe.

## COUNT I-FAIR DEBT COLLECTION PRACTICES ACT-DEFENDANTS GUERRINI AND JAFFE

26. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.

27. Defendants' violations of the FDCPA include, but are not limited to:

   A. Defendant violated §1692d by engaging in conduct, the natural consequence of which is to oppress, harass, and abuse the Plaintiff, when Defendants told Plaintiff that she was required to settle the second debt before Amex would execute the Agreement, contrary to what had previously been agreed to between Amex and Plaintiff;

   B. Defendant violated §1692e when Defendants falsely represented that she was required to settle the second debt before Amex would execute the Agreement, contrary to what had previously been agreed to between Amex and Plaintiff;

   C. Defendant violated §1692e (2) when Defendants falsely represented the amount and character of the debt when they stated that Plaintiff was required to settle the second debt before Amex would execute the Agreement, contrary to what had previously been agreed to between Amex and Plaintiff;

   D. Defendant violated §1692e (5) when Defendants threatened that Amex would not execute the Agreement unless the second debt was first settled when they could not legally do so, as they had already accepted a first installment payment from Plaintiff, and also because they drafted the Agreement on terms that did not even reference the second debt;

   E. Defendant violated §1692e (10) when Defendant falsely represented that Plaintiff would have to settle the second debt before Amex would execute the Agreement that its own attorneys had drafted, and that Amex had already approved;

   F. Defendants violated §1692f (1) when Defendants attempted to collect the second debt by threatening that Amex would not sign the Agreement until Plaintiff had settled the second debt, as such collection is not authorized by any agreement between the Plaintiff and Amex, nor is the collection of said debt, in the manner described, permitted by law;

   G. Defendants violated §1692g(b) when they continued their collection efforts by filing a lawsuit against the Plaintiff to collect the alleged debt, despite not having first sent Plaintiff a response to her validation request faxed to Defendant Guerrini on June 22, 2010;

28. As a result of one or more of Defendants' violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorney fees.

29. Plaintiff has experienced, *inter alia*, irritability, emotional distress, sleeplessness, depression as well as financial damages in having to hire an attorney to protect herself against Defendants' actions alleged herein. (Exhibit H, Affidavit).

## REQUEST FOR RELIEF-FDCPA

WHEREFORE, Plaintiff requests that judgment be entered in his favor against the Defendants for the counts alleged above for:

A. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

B. Actual damages;

C. Costs and reasonable attorney fees pursuant to 15 U.S.C. 1692k(a)(2); and

D. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

By: /s/ Mario Kris Kasalo
Mario Kris Kasalo

**The Law Office of M. Kris Kasalo**
**"A Consumer Protection Law Firm"**
111 East Wacker Drive, Suite 555
Chicago, Illinois 60601
tele 773.847.2600
fax 773.847.0330
mkriskasalo@yahoo.com